[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 19, 2007
THOMAS K. KAHN
CLERK

----------------------------------------
No. 06-14237
Non-Argument Calendar
----------------------------------------

D.C. Docket No. 05-00449-CV-1-WS-B

LOUIS G. WEAVER,

Plaintiff-Appellant,

versus

MOBILE COUNTY, et al,

Defendants,

JAMES BONDING COMPANY,

Defendant-Appellee.

----------------------------------------
Appeal from the United States District Court
for the Southern District of Alabama
----------------------------------------

**(April 19, 2007)**

Before EDMONDSON, Chief Judge, ANDERSON and BARKETT, Circuit
Judges.

PER CURIAM:

In this civil rights action, Plaintiff Louis G. Weaver ("Plaintiff") appeals the district court's grant of summary judgment to Defendant Jack Tillman, Sheriff of Mobile County ("Sheriff Tillman"). We find no reversible error; we affirm.

Plaintiff brought this suit against Tillman and others pursuant to 28 U.S.C. § 1983 as the administrator of the Estate of James Ellis Weaver ("Weaver"), his son. The Amended Complaint alleges that Tillman violated Weaver's constitutional rights by failing to provide Weaver with adequate medical treatment while he was detained at the Mobile County Metro Jail in Mobile, Alabama, in August 2003.[1] According to the record, Weaver was booked at the jail on 4 August 2003 on various charges. A screening form completed at that time indicated that Weaver was conscious and alert, without visible signs of illness requiring immediate medical treatment, but that he did have some facial bruising. The intake form signed by Weaver stated that he had no current illness, was taking no medication, and had no special health requirements.[2]

---

[1]On 11 October 2006, we granted the parties' joint motion to dismiss Plaintiff's appeal of the district court's grant of summary judgment to Defendant Mobile County. Plaintiff's claims against the bail bondsmen who detained Weaver and allegedly "beat him up" are not before us.

[2]Plaintiff contends that the screening form was "not filled out in any way except cursory," pointing to an uncompleted section. But, the accompanying computer printout – which Weaver signed – indicates that Weaver reported no illnesses or medication.

A separate "Medical Encounter Record" completed by a jail nurse at the time of Weaver's arrival indicates that Weaver had a black eye, was alert and oriented, and that he smelled of alcohol. The nurse recommended medical treatment "ASAP," which the district court assumed to refer to Weaver's facial bruises and cuts, as Weaver had not disclosed more serious symptoms. There is no evidence that Weaver received medical treatment at intake.[3]

The record contains testimony from Weaver's parents that they conveyed to an administrative assistant at the jail their concerns that Weaver was sick, had hepatitis C, and had previously had a staph infection. But, the record contains no evidence that Weaver ever requested medical treatment at daily sick call – or otherwise – until 9 August 2003.[4] On that morning, the guard conducting sick call brought Weaver to the jail clinic, where a nurse examined him and reported that he was "complaining of chills, fever, dizziness and weakness." Weaver was transferred to a Mobile hospital for treatment, where he was diagnosed with septic endocarditis and a staph infection. He died on 16 August 2003 from

---

[3]In fact, another form contained in the record suggests that Weaver refused treatment at that time. Plaintiff attacks the authenticity of this form and whether it actually refers to Weaver, as the portion in which the inmate name appears is not visible. In accepting the form into the summary judgment record, the district court noted that Plaintiff offered no affirmative evidence to contradict the form or Sheriff Tillman's assertion that Weaver refused medical treatment at intake.

[4]The record shows that Weaver's inmate account was credited on 6 August 2003 with sufficient funds to cover non-emergency medical treatment.

complications from open-heart surgery. One of Weaver's attending physicians submitted an affidavit opining that Weaver was septic when he was admitted to the jail and that prompt treatment "likely . . . would have lessened [this] serious medical condition."

The district court granted Sheriff Tillman summary judgment, concluding that there was no violation of Weaver's constitutional right to adequate medical care during his detention.[5] The district court also concluded that, even if a constitutional violation did exist, Sheriff Tillman could not be held liable in his individual capacity under section 1983 because the Standard Operating Procedures ("SOPs") regarding medical treatment at the jail[6] were facially constitutional and there was no evidence of a "custom or widespread practice of deliberate indifference to the medical needs of Jail inmates," notwithstanding the SOPs.[7]

---

[5]Although state government officials' treatment of pretrial detainees is technically governed by the Fourteenth Amendment Due Process Clause, not the Eighth Amendment, the legal standards for provision of medical care are the same under both amendments. See Lancaster v. Monroe County, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

[6]By August 2003, the jail had several SOPs relating to medical treatment for inmates. They included an initial screening by intake officers and by jail medical staff; morning sick calls during which inmates may request medical attention; a ten dollar ($10) fee for non-emergency sick call visits, which is to be entered as a negative charge on an inmate's account if he lacks sufficient funds at the time care is requested; and provisions for emergency medical treatment without charge.

[7]Although Sheriff Tillman framed his motion for summary judgment as one for qualified immunity, the district court did not refer to qualified immunity in its order. The district court decided Plaintiff's claims on the merits, rather than on the defense of qualified immunity.

The district court also noted that, to the extent Sheriff Tillman was sued in his official capacity, he was immune from suit under the Eleventh Amendment as a state official.

We review a district court's order granting summary judgment de novo, viewing all facts in the record in the light most favorable to the non-moving party and drawing all reasonable inferences in his favor. See Lancaster v. Monroe County, 116 F.3d 1419, 1420 n.4, 1424 (11th Cir. 1997). The moving party must show that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. Id. at 1424. Plaintiff argues that a question of fact exists on whether a constitutional violation occurred and on whether Sheriff Tillman is individually liable as a final policymaker. We disagree and affirm the judgment.[8]

It is well-established that a "Sheriff can have no respondeat superior liability for a section 1983 claim" Marsh v. Butler County, 268 F.3d 1014, 1035 (11th Cir. 2001). Thus, Sheriff Tillman is only liable if he personally participated in the allegedly unconstitutional conduct or if there is "a causal connection between [his] actions . . . and the alleged constitutional deprivation." Cottone v.

---

[8]To the extent that Sheriff Tillman is sued in his official capacity, we also affirm the district court's grant of summary judgment on the ground of Eleventh Amendment immunity. Lancaster, 116 F.3d at 1429.

Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff admits that Sheriff Tillman "had no personal knowledge of [Weaver's] medical condition." Therefore, to survive a motion for summary judgment, Plaintiff must present sufficient evidence of either (1) "a . . . custom or policy [that] results in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Sheriff Tillman] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so;" or (2) "a history of widespread abuse [that] put[] [Sheriff Tillman] on notice of the need to correct the alleged deprivation, and he fails to do so." Id. (internal punctuation and citations omitted). Plaintiff has failed to meet this burden.

Plaintiff's contentions that the SOP requiring inmates to pay ten dollars before receiving medical treatment is a "custom or policy" that resulted in deliberate indifference to Weaver's constitutional rights are without merit. Although the SOPs state that a ten dollar co-pay is due for non-emergency treatment, they also provide that there is no charge for emergency care. And, an inmate with insufficient funds for non-emergency care is not denied treatment, but simply incurs negative balance in his inmate account. There is no evidence that the jail staff deviated from this policy in Weaver's case; in fact, the record suggests that the staff followed the policy. Sheriff Tillman offered evidence

6

indicating that Weaver was offered medical treatment upon intake – when he had no money in his inmate account – and refused such treatment. Plaintiff did not offer evidence rebutting this assertion or showing that Weaver in fact requested medical care before 9 August. And, the record shows that Weaver had sufficient funds in his account several days <u>before</u> he sought and received medical care.[9] This evidence directly contradicts Plaintiff's assertion that "it is . . . a fair reading of the facts, that had [Weaver] had the money to see the doctor, he would have been sent to the clinic." Thus, there is no evidence that the co-pay policy deprived Weaver of his constitutional rights.

Plaintiff also argues that Sheriff Tillman is liable – notwithstanding the SOPs – because of a custom or widespread practice of deliberate indifference to the medical needs of jail inmates. But, Plaintiff has failed to show "a widespread practice that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law." <u>Griffin v. City of Opa-Loka</u>, 261 F.3d 1295, 1308 (11th Cir. 2001 (citation omitted). In his attempt to show such a widespread policy, Plaintiff points solely to the death of inmate James Carpenter ("Carpenter")

---

[9]Jail records reflect that Weaver's account was credited $10 on August 6 and $15 on August 8. Although Plaintiff testified that he took $10 to the jail on August 4 and $25 on August 8, he does not argue that the jail records are inaccurate. In any case, the record shows that Weaver's account reflected a balance of $10 – the requisite fee for non-emergency medical treatment – as of August 6.

at the jail in July 2000, arguing that this incident put Sheriff Tillman "on notice" of the failure of the jail's delivery system for medical care. This comparison fails; as the district court found, the "Weaver and Carpenter episodes bear little similarity." Unlike Carpenter, Weaver was offered medical care upon his admission to the jail and every morning during sick call. No evidence shows that the guards or other inmates were aware of Weaver's serious medical needs before 9 August. And, the record shows that the SOPs on medical care were substantially improved between July 2000 and August 2003. Even if Carpenter's death resulted from a constitutional violation, that past violation does not automatically support liability for a "widespread practice" when significant remedial acts have been taken. See Cottone, 326 F.3d at 1361. Plaintiff presented no evidence that the jail staff routinely ignored the SOPs or that other inmate received inadequate medical care between July 2000 and August 2003. Given the circumstances, the single incident involving Carpenter – which occurred under significantly different circumstances – is insufficient to support a finding of liability under the constructive "widespread practice" theory.

Because Plaintiff failed to present evidence that Sheriff Tillman implemented an affirmative policy that resulted in the denial of medical care for inmates, or was aware of a widespread practice of denying such care, he cannot be

held liable as the final policymaker under section 1983, even if the alleged conduct constituted a deprivation of Weaver's constitutional rights. The district court's grant of summary judgment for Sheriff Tillman is therefore affirmed.

AFFIRMED.